Henry Grove et al., Appellants, v. Thompson Carlisle, Appellee.

### APPEAL FROM PEORIA.

When a man leaves his wife in a destitute condition for three years, and she, by her exertions, pays part of the purchase money for land, and her husband pays the residue, consenting that it shall be placed in the hands of a trustee, for the benefit of his wife, whom he has ill treated and abandoned, a court of equity will not take the title from the trustee and vest it in the husband, especially when he has other means of support.

July 25, 1855, Carlisle filed his bill against Grove, Comstock and Daugherty, setting forth that, in 1852, while he was absent from Peoria, Mrs. Carlisle made a contract with Bestor for lot eleven in Mills' Addition to Peoria, for $250, last payment to be made in three years; that she paid $50; that, on complainant's return in the spring of 1853, he paid Bestor $183, and took deed in her name, at her request, with covenants of warranty.

That, after purchase of Bestor, complainant built dwelling house and fences of the value of $1,500; that lot and improve-

Grove et al. *v.* Carlisle.

ments are now worth $1,800; complainant rented part to Wilson. That legal title was not in Bestor, but was in Daugherty and Comstock; that Bestor purchased of them to get rid of his covenants, and that, at request of Mrs. Carlisle and Grove, Comstock and Daugherty conveyed to Grove, in trust for complainant's wife. Trust deed set out that, by virtue of said trust deed, Grove claims to be legal owner, in trust for complainant's wife, and, without complainant's consent, threatens to bring ejectment. That, by reason of such claim, complainant finds it difficult to rent for full value. That complainant is true owner in equity; that legal title ought to be vested in him; that neither Daugherty, Grove or Comstock have any just or equitable claim to said premises, *but the same belongs to complainant in fee.*

Bill prays answer under oath, and that Grove convey to him, and for injunction, which was allowed.

September 15, 1855, Grove filed his answer under oath; states his belief that, in 1852, Ann Carlisle did purchase of Bestor for $250, and paid $50; that some three years prior to 1852, complainant left Peoria and emigrated to California, and left his wife in destitute circumstances, and wholly unprovided for; that after being three years absent, without writing to his wife, and wholly failing to provide for her support, Ann contracted with Bestor for the lot, and paid $50, earned by herself. Bestor sold at less than real value to provide her with a home.

That, in 1852, complainant returned and applied to shave her note, as he wanted to secure the lot for Ann; that Bestor, at complainant's request, shaved the note and conveyed to Ann; don't know whether complainant built houses and fences or not, but denies that they were worth $1,500; that he believes complainant built a kitchen and may have patched fences, but the whole could not amount to half stated in said bill; that if complainant did so, he did it knowing it was her property, and with intention and expectation that it would inure to her; that complainant has already received in rent a large proportion of said expenses and improvements; that complainant rented to Wilson; that, about the time deed was executed to him, defendant saw Carlisle push and force his wife out of doors, and admits Bestor supposed he held legal title, but he was mistaken, and, at the time, Daugherty and Comstock held the legal title; that Bestor bought the same from Comstock and Daugherty, and paid $200, but not for the purpose stated in the bill; denies that deed was made to him at his urgent solicitation; admits Comstock and Dougherty and wife executed trust deed to him, and supposed it was done at Ann's request.

That Bestor paid the $200 out of sympathy for Mrs. Carlisle; that Comstock and Daugherty sold and conveyed for less than its real value, with the view of aiding and befriending Mrs. Carlisle; that complainant applied to Daugherty and Comstock, but they refused to convey to him; that if complainant can now wrest said lot from Ann, he will perpetrate a wrong and fraud on Bestor, Comstock and Daugherty; denies that Ann Carlisle deserted her husband, but that complainant drove her off; that, since said deed was executed, said complainant was fined for assaulting and beating her.

That complainant has other property; that he sold one lot for $1,500; admits that he claims to own said premises under said trust deed, and subject to said trust; admits that he intends to bring ejectment, and would have done so, but for the injunction; denies that complainant is true owner, and insists that he (defendant) is the owner, and that Ann has no other property; that he accepted said trust in good faith; that said Ann is sickly and needs a home, and that the rents and profits of said premises are not more than sufficient to supply her with necessaries; that complainant has in possession $2,700 cash, and has a claim in California; that Ann should have been made a party; that Ann insists on respondent executing the trust.

September 15, 1855, Comstock and Daugherty answer under oath. That in June, 1855, they conveyed lot eleven to Grove, in trust for Mrs. Carlisle; that complainant made a more advantageous offer, but they refused to accept, and refused to convey to him, and supposed they had a right to convey to whom they pleased, as the title was in them; that the lot, without improvements, was worth $500; that they conveyed to Grove, in trust, etc., for the nominal sum of $200, paid by Bestor, out of sympathy for Mrs. Carlisle; that the deed was executed to Grove at Mrs. Carlisle's request, but Grove never spoke to them on the subject; they have now no interest in said premises, but desired that said Ann may hold the premises, as they intended she should when conveyance to Grove was executed; at the time they conveyed to Grove they believed they had a good title, both at law and in equity, and believed they had a right to convey, whether complainant consented or not.

Complainant filed replications.

*Depositions*: D. Keighan knows parties and premises; lathed a kitchen; worth $10; Mrs. Carlisle paid me; Carlisle was absent.

Sarah Moon knows parties; Carlisle left seven years ago; absent four years; left for California second time some two years ago; absent ten months; she seemed to be destitute of

clothing; she had no home or clothing, and was within two weeks of being confined; he rented his house before he went away, at $6; afterward sold it for $1,600; the rent was to be paid to Blakeley; she worked at Cray's and at Manfield's; she received no word from him while he was gone; he did not treat her pleasantly; he sold his cow, chairs and bedstead before he left; he left her bed.

James Murden did the plastering at a reduced price to aid Mrs. Carlisle, while he was gone to California; she paid me $50; R. Wyatt built fence and planted trees on lot during his absence; Mrs. Carlisle paid $12 for it.

Nancy Albert knows parties eight years; lived with witness when first married; he was sometimes cross; she was confined two weeks after he left for California; he left no means; she began on lot four or five years ago; front part of house was finished and people living in it when he came back; heard her scream once; he came out with a broomstick; she was sick during first summer they were married; he was at home at night, but she was alone through the day; she needed help; . never knew Carlisle to get any clothing while they lived with me; she always worked when she was well; never saw him strike her; heard the stroke and her scream; heard him tell her not to come in the house that night; Carlisle took off some of the furniture; he furnished one or two rooms when he came back from California.

The court ordered that Grove should convey to Mrs. Carlisle in sixty days. The decree was pronounced by GALE, Judge, at September term, 1856, of the Peoria Circuit Court.

HENRY GROVE, for Appellant.

H. M. WEAD, for Appellee.

CATON, J. This decree, directing a conveyance to Mrs. Carlisle, is no doubt erroneous, whatever view may be taken of the rights of the parties. The bill is filed by Mr. Carlisle, asking for a conveyance to him. She is made a defendant, and answers the bill, denying the equitable relief sought by the complainant, and asks for no affirmative relief in her own favor. In this state of the pleadings the only relief which could be granted was to order a conveyance to the complainant, and if that was not warranted by the proofs, then the bill should have been dismissed; and this we think should have been done. Under the circumstances of the case, as shown by the record, we do not think that good conscience requires that the court should compel the trustee to convey this property to the complainant. In 1849 he went to California,

leaving his wife in delicate health and about to be confined, and in destitute circumstances. What little provision he did make for the payment of the physician's bill was entirely inadequate to her necessities, and left her substantially dependant either on her own efforts or upon the charity of her friends, or the public, for support. He was absent four years, sending her no assistance, and not even letting her hear from him. She took in sewing, or went out to service, and thus, by her own efforts, supported herself. She also bought the lot in question of Bestor, and, from her savings, partly paid for it. When he returned in 1853 he paid the balance due Bestor and requested a deed to be made to her, which was done. He however took possession of the property and rented it, and has been in the receipt of the rents and profits ever since, so far as we can gather from the evidence. She paid for a part of the improvements on the lot, and he paid for a part. It was ascertained that the title which Bestor sold was not good, and that the genuine title was in Comstock and Daugherty, who, for a consideration, paid by Bestor, conveyed to Grove, in trust for Mrs. Carlisle, and refused to part with their title in any other way, or on any other terms.

Again the complainant went to California, in 1854, and returned the same year, after which the parties lived together for a time, when the complainant drove his wife from the house destitute, using personal violence, without showing any cause for his brutal conduct, and now seeks to deprive her of this property, thus secured to her separate use, while the evidence shows that he is in good circumstances, and has sufficient of other property even for the support of both. At least, he does not want this property for his support, while she certainly does. He must have a hard conscience to ask for such a relief against his wife, whom he has thus ill treated and driven forth destitute, and he must look in vain for its sanction in a court of equity. It is true he paid for a part of the property and improvements, but he did so professedly for her benefit, and for the purpose of making a provision for her, and it is now too late to change that purpose. The question is not, whether the court would order him to convey the title to a trustee for her benefit, if it found the title vested in him, but the question is, whether he has shown such an equitable claim as requires the court to interfere and disturb the existing state of things, which was established, at least so far as Bestor's conveyance to her is concerned, by his own consent and active coöperation, and take the title from the trustee and vest it in him. Even if he had purchased the property, and paid for it entirely himself, and taken the conveyance to her or to the trustee, for her use, the court would not afterward, when he had repented

of the provision thus made for her, allow him to reclaim it, much less would it in a case like this, where she had, besides supporting herself for years, mostly without his aid or comfort, paid for a part of the property by her own earnings. There is no sort of equity or justice in the complainant's claim for relief, and the bill should have been dismissed by the Circuit Court.

The counsel for the complainant, in his written argument, insists that the ill treatment alleged in the defense is not proved. In this he is certainly mistaken. Although no witness saw him strike her, yet the blows were heard, and she was heard to scream. He was seen to pursue her from the house with a broom or hammer handle, and order her not to return that night. Other specific acts of ill treatment are also proved, if the witnesses are to be believed. According to our notions of conjugal deportment, this was very ill treatment on his part. It is true that the complainant may not have consented to the conveyance of the title to the trustee, and no doubt that such conveyance was more prejudicial to him than a direct conveyance to her, for then he would have been tenant by the courtesy; but in that event, a court of equity would not have hesitated, under the circumstances of the case, to put her in the receipt of the rents and profits. In any aspect of this case, we think it the duty of a court of equity to abstain from disturbing the title to this property as it is at present vested.

The decree of the Circuit Court must be reversed and the bill dismissed, with costs, to be paid by the complainant in this court and in the court below.

*Decree reversed.*